```
            UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA
----------------------------X

UNITED STATES OF AMERICA

              v.           Criminal Case No. 21-330

JONATHAN JOSHUA MUNAFO,

                  Defendant

----------------------------X
                                     Washington, D.C
                               Tuesday, May 11, 2021.
                                       2:00 p.m.

            TRANSCRIPT OF VIDEO ARRAIGNMENT
         BEFORE THE HONORABLE JAMES E. BOASBERG
             UNITED STATES DISTRICT JUDGE
APPEARANCES:

For the Government: Sean Patrick Murphy,  AUSA
                    U.S. ATTORNEY'S OFFICE
                    District of Puerto Rico
                    350 Carlos Chardon Avenue
                    Torre Chardon, Ste 1201
                    San Juan, PR 00949
                    787-221-6077


For the Defendant:  Kevin Lerman, AFD
                    FEDERAL PUBLIC DEFENDER
                    District of Puerto Rico
                    241 F.D. Roosevelt Ave
                    San Juan, PR 00918-2441
                    787-281-4922




Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247
```

```
 1                      P R O C E E D I N G S
 2              THE DEPUTY CLERK:  We are here for criminal
 3   initial arraignment in 21-330, United States versus Jonathan
 4    Munafo.  Starting with counsel for the government, please
 5   identify yourself for the record.
 6              MR. MURPHY:  Good afternoon.  Sean Murphy, AUSA
 7   out of the District of Puerto Rico, currently detailed to
 8   the U.S. Attorney's Office in the District of Columbia.
 9              MR. LERMAN:  Good afternoon, Your Honor. Attorney
10   Kevin Lerman with the Federal Public Defender in the
11   District of Puerto Rico.
12              THE COURT:  Okay.  Good afternoon.
13              MS. PETERSON:  Your Honor, this is Michelle
14   Peterson for the Federal Public Defenders Office in
15   Washington, D.C.  Mr. Lerman is going to be entering his
16   appearance on behalf of Mr. Munafo.  I'm here simply to
17   facilitate that.
18              I have not had a financial affidavit provided to
19   us by the arresting jurisdiction but he was appointed
20   counsel in the arresting jurisdiction.  And I have reason to
21   believe that he qualifies.  So we would be asking the Court
22   to appoint the Federal Public Defender from the District of
23   Puerto Rico.
24              THE COURT:  Okay.  I'm happy to do that.  Is your
25   office, Ms. Peterson, going monitor the financial affidavit?
```

1             MS. PETERSON:  We can follow up on that, Your
2  Honor.  I believe that Mr. Munafo had some difficulty
3  answering questions about his financial situation.  So I
4  think it would be better if counsel asked those questions in
5  a separate financial affidavit and provide it to the Court.
6             THE COURT:  That sounds fine.
7             Thank you, Mr. Lerman, welcome.
8             Okay, Mr. Munafo, good afternoon to you as well.
9             Let's start then I think with the arraignment,
10 Nicole.
11            THE DEPUTY CLERK:  Your Honor, let the record
12 reflect that I did submit copies to all counsel fore this
13 afternoon's hearing.
14            Mr. Jonathan Munafo, you are hereby charged in the
15 10 count criminal indictment:
16            18 USC 231(a)(3), civil disorder;
17            18 USC 111(a)(1), assaulting, resisting or
18 impeding certain officers;
19            18 USC 1512(c)(2), obstruction of official
20 proceeding;
21            18 USC 1752(a)(1) and (b)(1)(A) entering and
22 remaining on restricted grounds with a dangerous weapon;
23            18 USC 1752(a)(2) and (b)(1)(A), disorderly and
24 disruptive conduct in a restricted building or grounds with
25 dangerous weapon;

1        18 USC 1752(a)(4) and (b)(1)(A), act of physical
2 violence against property on restricted grounds with a
3 dangerous weapon;
4        18 USC 1752(a)(4), act of physical violence
5 against a person on restricted grounds;
6        18 USC, 641, theft of government property;
7        40 USC 5104(e)(2)(D), disorderly conduct in a
8 capitol building;
9        40 USC 5104(e)(2)(F), act of physical violence on
10 capitol grounds.
11        For purposes of today's hearing, how do you wish
12 to plea and do you waive formal reading of the charges?
13        THE DEFENDANT:  Guilty as charged.
14        MS. PETERSON:  Mr. Munafo, we'll do the talking
15 for you.  Okay?
16        THE COURT:  This is the time for your attorney
17 make representations for you.  Mr. Munafo, if we need
18 anything from you directly, I'll certainly let you know.
19        Okay, Mr. Lerman.
20        MR. LERMAN:  Your Honor, at this time, we're
21 entering a not guilty on Mr. Munafo's behalf to all charges
22 and we would waive a formal reading of the indictment.
23        THE COURT:  Okay.  Thanks so much.  So Mr. Lerman,
24 you and Mr. Murphy are from the District of Puerto Rico but
25 the docket, as I see it, has him in Florida.  Where is he

1   right now, Mr. Lerman?

2              MR. LERMAN:  He is currently at the Orange County

3   Jail in Orlando.

4              THE COURT:  So is it just a coincidence that you

5   and Mr. Murphy are both from Puerto Rico in this case?

6              MR. LERMAN:  I think it is.

7              THE COURT:  Okay.

8              MR. LERMAN:  That may be something about matching

9   us with our relative proximity to where Mr. Munafo is

10  currently held.

11             THE COURT:  Or maybe the U.S. Attorney's Office

12  felt they didn't have anyone from this district good enough

13  to handle it.  So they brought in Mr. Murphy from your home

14  district.  Okay, something along those lines.

15             All right.  Welcome to both of you.

16             From the docket, I don't see, Mr. Murphy, that

17  there has ever been a detention hearing.

18             MR. MURPHY:  That is correct, Your Honor.  And if

19  I may give just a little bit of background from what I

20  understand.

21             THE COURT:  Sure.

22             MR. MURPHY:  This defendant was arrested in the

23  Middle District of Florida on a complaint out of the Western

24  District of Michigan.  After that happened--

25             THE COURT:  In a different case?

1        MR. MURPHY: Yes, Your Honor, for threats being
2   made across state lines, entirely separate from the January
3   6th events.
4        After that happened -- well, before I get to that.
5   He was ordered removed to the Western District of Michigan
6   and detained pending removal in that case. After that
7   happened, we filed our criminal complaint and he had his
8   initial appearance on the complaint. Then we filed our
9   indictment and he had his initial appearance on the
10  indictment. And then the Middle District of Florida ordered
11  him removed to the District of Columbia after he was
12  transferred to the Western District of Michigan.
13       So the reason I reached out to your courtroom
14  deputy to ask to have this scheduled was because transfers,
15  as Your Honor is aware, are taking anywhere from weeks to
16  months, even from New York to Eastern Pennsylvania.
17       So in the interest of making a record of the
18  tolling of speedy trial pending the proceedings in the
19  Western District of Michigan and the removal from the
20  Western District of Michigan, I reached out to the U.S.
21  Marshals in Orange County. They indicated that he had
22  access to video conference facilities there but we had no
23  idea the next time you would have access to those. So I
24  wanted to try to get the ball rolling as it were before he
25  began the transfer process.

1      THE COURT:  So it's your understanding that he is
2  going to be transferred to Michigan and kept there until
3  that case is resolved?
4      MR. MURPHY:  The order of removal does indicate
5  that he will be moved to the District of Columbia after the
6  Western District of Michigan concludes their proceedings
7  with him, yes.
8      THE COURT:  Okay.
9      MR. MURPHY:  So I don't know if Your Honor would
10 like us to file status updates every 60 days or so or a
11 shorter time period just giving a periodic update and
12 continuing to request the tolling of speedy trial.  I'll
13 defer to Your Honor how exactly to handle it.
14     THE COURT:  Just because it has been a while since
15 I've had the instance, I don't recall what provision of
16 Speedy Trial Act refers to tolling when the person isn't
17 even in the jurisdiction.  But I think that, particularly if
18 he is being held somewhere else, I'm not sure if it runs
19 anyway.  But we can talk about that.
20      But you all are planning to give discovery and
21 then be in contact with Mr. Lerman, or are you essentially
22 asking this case be stayed until Michigan is finished?
23     MR. MURPHY:  Your Honor, we can definitely begin
24 the discovery process.  There are a lot of open source
25 videos and photographs that I'm happy to point Mr. Lerman

1  man in the direction of.  In terms of official discovery, as
2  Your Honor is aware, it involves a very large scope for
3  these capitol riot cases.  And we will be providing
4  additional discovery officially as it is made available to
5  us.
6          THE COURT:  So Mr. Lerman, will you be
7  representing him in the Michigan case or will he be getting
8  a federal public defender from that jurisdiction, do you
9  know?
10          MR. LERMAN:  At this time, we are not anticipating
11  representing him in the Michigan case.  Right now our scope
12  is only in the D.C. case.
13          THE COURT:  Okay.  So that you then will be in
14  contact with Mr. Murphy and get discovery.  So that whenever
15  Michigan is finished with him, we won't be starting from
16  square one here, that you will have, that you will be down
17  the road.  In fact, maybe there is a way, after everybody is
18  interested and I offer no opinion on it, there is some
19  global resolution of his matters.  So I guess you can be in
20  contact with the Michigan attorney when that person is
21  appointed.
22          Mr. Lerman, you understand then that -- have you
23  already been in contacted with the person representing him
24  in Michigan?
25          MR. LERMAN:  I have reviewed the docket in the

1   Michigan case.  And it does not appear that counsel has made
2   an appearance on that case.  So we plan to reach out to the
3   federal public defender in that district to inquire whether
4   someone has or will be appointed.
5           THE COURT:  Okay.  So that, I guess the question
6   then is what you want to do -- what we could do is say,
7   detained without bond without objection so he gets credit,
8   he can arguably get credit for this time, Mr. Lerman, since
9   he is not going anywhere anyway.  If at some point the
10  Michigan hold is released, then we could have a hearing on
11  detention hearing.  But is there a reason why you would
12  oppose detention in this case pending that?
13          MR. LERMAN:  At this moment, we think that we
14  would have to oppose so that we could do our initial due
15  diligence on the case and we believe there may be some
16  urgent issues to deal with where we would need to be able to
17  be in touch with Mr. Munafo in the coming days or weeks.
18          THE COURT:  But he is not going, he is not getting
19  out because there is a hold in Michigan, right?
20          MR. MURPHY:  Yes, Your Honor, the order of removal
21  from the Middle District of Florida has him detained pending
22  transfer to the Western District of Michigan.
23          MS. PETERSON:  May I suggest, there have been some
24  cases where is the Court has directed the marshal to stay
25  the transport.  It is a little more complicated given there

1   is a third jurisdiction involved.  But it seems to me, just
2   from very brief interaction, there might be some medical
3   health issues and mental health issues that Mr. Lerman and
4   (inaudible) could get on top of right away.
5            THE COURT:  I can't countermand the Michigan
6   transfer order.  Right?
7            MS. PETERSON:  Right.
8            THE COURT:  So even if I said I'm not going to
9   order him taken to D.C. now, he is still going to get
10  transferred to Michigan whenever the marshals can do that,
11  regardless of what I want.  I mean, I agree with you,
12  Ms. Peterson, I think that the competence issues may need to
13  be, will need to be raised in Michigan.
14           And Mr. Lerman, you can talk to counsel there
15  about that once that person is appointed.  Once that person
16  is appointed, maybe you and that person can seek to stay the
17  transport for the reasons Ms. Peterson indicates.  But I
18  don't think there is anything I can do about that.
19           So, back to you, Mr. Lerman, there could be a
20  detention hearing.  I'm just wondering whether it's not moot
21  right now.
22           MR. LERMAN:  I don't think it would necessarily be
23  moot because, both this district and the District Court in
24  Michigan would have to, if he were to be released, both
25  courts would have to make that decision.

1     THE COURT: But I'm inferring, I may be wrong, but
2 that there has been a detention hearing in Michigan and he
3 is held pending transport.
4     MR. LERMAN: I don't believe that's the case.
5 There are two dockets in the Middle District of Florida.
6 And I believe that the hearing was reserved to be held in
7 the, it may be a semantic point, but I believe the hearing
8 was reserved to be held in the Western District of Michigan.
9     MR. MURPHY: If I may, Your Honor.
10     THE COURT: Sure.
11     MR. MURPHY: The reservation of the detention
12 hearing was as to the District of Columbia only. I'm
13 referring now to the Middle District of Florida docket 21-
14 MJ-1355 from Magistrate Judge Kelly where he was ordered to
15 appear in the Western District of Michigan. And then as
16 pertinent, the order said well that the defendant remains in
17 custody after the initial appearance.
18     THE COURT: Otherwise, it would have to be,
19 otherwise, they would just say show up in Michigan on your,
20 by your own valor. So that's why he is being held. Again,
21 you want to do it, fine, saying if he is not going anywhere,
22 I'm not sure if it is worth it but that's your call, Mr.
23 Lerman.
24     MR. LERMAN: I think if there is a way for him to
25 remain and I think it may require a motion in the docket in

1   the Middle District of Florida.  But our request would be
2   that, even if the case is held over for a status, we would
3   like to ask that the hearing be set for either a status
4   first or for a detention hearing so that we have the
5   opportunity to do (audio gap) considerations.
6              THE COURT:  I'm not sure this is necessary but I'm
7   not going to refuse to do it.  So we'll set send it to Judge
8   Meriweather for a detention hearing.
9              (Discussion with Courtroom Deputy).
10             MS. PETERSON:  I believe Mr. Lerman needs to talk
11  to Mr. Munafo.  They have a called scheduled for tomorrow,
12  so it wouldn't work to have a detention hearing today.  So I
13  think we have to simply ask that he not be transferred out
14  of Orange County since he has a pending matter in this
15  court, which is a detention hearing, that will be scheduled
16  for later this week.
17             THE COURT:  Going back to your earlier question,
18  Mr. Murphy, yes, I think a status report every 60 days until
19  Michigan matter is resolved or he is released, that we can
20  then have him come here and go forward.
21             So Mr. Lerman, any objection to that?
22             MR. LERMAN:  No, Your Honor.
23             THE COURT:  Any objection to excluding the time
24  under the Speedy Trial Act?
25             MR. LERMAN:  Not at this time, no.

1        THE COURT:  All right.  So I find that it is in
2   the interest of justice to exclude the time.  There may be
3   another statutory exclusion in any event regarding
4   individuals who aren't present in the jurisdiction.  But I
5   do find it is in the interest of justice given that he is
6   being held, being transported to Michigan, he has to resolve
7   his Michigan case.  In addition, the current case is a
8   complex one involving a great deal of discovery and multiple
9   prosecutions arising out of the same event.
10         So your 60 day status report, Mr. Murphy, Mr.
11  Lerman, should continue to indicate whether the defendant is
12  waiving time.  If not, then we'll have to have a hearing and
13  decide how to proceed.
14         MR. MURPHY:  Yes, Your Honor.
15         THE COURT:  I'm happy, Ms. Peterson, to issue a
16  order to say the defendant must not be transported until his
17  detention hearing is held.  And then my courtroom deputy
18  will put you folk in communication with the magistrate
19  judge's chambers and you can set a time for that.
20         Okay.  Anything else then that either side wants
21  me to address today, Mr. Murphy?
22         MR. MURPHY:  No, Your Honor, not at this time,
23  thank you.
24         THE COURT:  Mr. Lerman?
25         MR. LERMAN:  No, Your Honor, thank you.

```
1              THE COURT:  Ms. Peterson, anything else?
2              MS. PETERSON:  No, Your Honor, thank you.
3              THE COURT:  Thanks, everybody.  We will talk to
4   you soon.
5              THE COURTROOM DEPUTY:  Your Honor, do you have a
6   specific date for the status report?
7              THE COURT:  You can calculate the 30 days.  Let's
8   say July 11th.  Thanks.
9              (Whereupon, at 2:27 p.m., the hearing concluded.)
```