IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *Plaintiff,* v. **JONATHAN J. MUNAFO**, *Defendant.* | Criminal Case. No.: 21-330 (JEB) |

**MOTION REQUESTING
PRE-TRIAL RELEASE ORDER OR, IN THE ALTERNATIVE,
SCHEDULING OF A DETENTION HEARING**

**BACKGROUND**

From mid-2020 to early-2021, Jonathan Munafo journeyed throughout the United States attending speaking events of former President Donald J. Trump, including the January 6, 2021 speech at the Ellipse, which preceded the Capitol events for which over 800 people have been charged.

From January 2021 through April 13, 2021, after having spent over year on the road, Jonathan Munafo lived uneventfully in the Deltona-Daytona Beach area of Florida.

On April 13, Mr. Munafo surrendered to Edgewater Police officers who were looking for him at the George R. Kennedy Memorial Park, a public space on the western bank of the Indian River.[1]

---

[1] When he surrender, Mr. Munafo believed he was wanted by law enforcement but did not know the precise reasons. Police were investigating Mr. Munafo's wellbeing due to mental-heath concerns raised by a third party. Their investigation revealed a federal warrant for his arrest. Seeing the officers, Mr. Munafo approached them and turned himself in. As the officers documented, he was wearing an extra pair of underwear and an extra pair of socks to ease his transition into custody.

Some ten days later, on April 23, 2021, Mr. Munafo was presented before a Middle District of Florida magistrate for Rule 5 proceedings and was apprised of charges in a Western District of Michigan case, Case No. 21-cr-99. Under Rule 5, he was also apprised of charges in this case, on April 26, 2021. *See* DE-1[2] (complaint). The Florida magistrate scheduled a preliminary hearing for April 30, 2021, but the government indicted Mr. Munafo on April 28, 2021, so it was not held. DE-6.

Pretrial Services officers interviewed Mr. Munafo, completing a bail report that recommended release on an unsecured bond on both matters. It recommended that he be required to seek and maintain employment, submit to mental-health evaluation and treatment, and undergo substance-abuse testing, evaluation, and treatment if necessary. Mr. Munafo forwent detention hearings in Florida.

On May 11, 2021, this Court arraigned Mr. Munafo on the indictment, and appointed counsel, who met Mr. Munafo, for the first time, seconds before the arraignment. At this time, he was without counsel in the Western District of Michigan. Upon our request, the Court ordered Mr. Munafo's transfer to Michigan stayed pending a detention hearing. But, believing the Michigan transfer took priority, the Marshals transferred him nonetheless.

Since then, Mr. Munafo was transferred throughout the United States and subjected to psychiatric evaluation, which a Western District of Michigan magistrate judge ordered *sua sponte*. The timeline went, roughly, as follows.

After leaving county jail in Florida in May 2021, the U.S. Marshals flew Mr. Munafo to Grady County Jail in Chickasha, Oklahoma. He remained there until

---

[2] Citations to "DE-[ ]" are to docket entries in the captioned case.

around June 9, 2021. On or about June 9, 2021, Mr. Munafo was transferred to Newyago County Jail in White Cloud, Michigan.

On June 15, 2021, Magistrate Judge Ray Kent *sua sponte* ordered Mr. Munafo "committed for evaluations [of] competency and sanity." W.D. Mich. Case No. 21-cr-99-JTN, ECF No. 14. On July 6, 2021, with Mr. Munafo still waiting in county jail in White Cloud, the court ordered Mr. Munafo transferred to FDC SeaTac to undergo examination. *Id.*, ECF No. 16.

Some five months later, on November 15 and 16, a BOP-employed psychologist completed the two court-ordered evaluations. *Id.*, ECF No. 23-24. During the evaluation period, the psychologist expressed to Mr. Munafo a concern that he was not being evaluated for sanity regarding charges in the D.C. January 6 matter. The psychiatrist warned that Mr. Munafo might have to re-do his evaluation later, which would entail additional prolonged transfer between county and federal jails.

The D.C. U.S. Attorney's Office echoed the specter of such "re-doing" of the evaluation in an August 2021 request that Mr. Munafo undergo a BOP-psychologist-directed "sanity" evaluation for the January 6 charges. Since "insanity" is an affirmative defense, *see* 18 U.S.C. § 17(a), the request was declined for reasons that are privileged.

In November 2021, the Michigan magistrate who had ordered the BOP-conducted evaluations found Mr. Munafo competent to stand trial. *Id.*, ECF No. 31 at *1-2. The magistrate also made a finding — contrary to 18 U.S.C. § 17, which makes insanity an affirmative defense and a question for the jury — that Mr. Munafo was not insane on January 5, 2021, at the time of the alleged Michigan offense. *Id.* at *2.

While at FDC SeaTac, Mr. Munafo suffered multiple severe mental health episodes, resulting in his being placed on mental-health observation on several occasions in September and October.

Through November 2021, the D.C. U.S. Attorney's Office indicated that the government would tender a plea offer that would jointly dispose of the Michigan and D.C. matters (based on events taking place roughly sixteen hours apart). *See* DE-15 (noting that "the parties have discussed a possible global resolution but the psychological evaluation" and "several other factors, has delayed … discussions").

In November 2021, the Marshals returned Mr. Munafo to Michigan initially in a state of severe stress and likely psychological crisis. In the last five months, however, with stabilized custody conditions and regular medication-based mental-health treatment, Mr. Munafo has demonstrated improved mental wellbeing and is actively involved with case preparation in both the Michigan and D.C. cases.

Consistent with the Bail Reform Act and related provisions, Mr. Munafo seeks pre-trial release on both matters with the condition that he reside in "KPEP," a residential housing and treatment program based in Kalamazoo. *See* KPEP, https://kpep.com/about/. Notably, while Mr. Munafo is now regularly receiving medication, he is not being regularly treated by any mental health professionals. At the KPEP program, he would receive such need treatment. The undersigned communicated this proposal to AUSA Sean Murphy, who stated the government opposes it.

### I. Motion for Release on the Same Conditions Imposed on the Western District of Michigan Matter (if Release Is Ordered)

While no detention order is docketed in this case, a removal order from Mr. Munafo's Rule 5 proceedings remains active. *See* DE-12 at *5 (ordering that

Mr. Munafo, *after* removal to "the Western District of Michigan, … be removed by the United States Marshal to the District of Columbia….").

Though the Rule 5 order recognized the Western District of Michigan court as having the final say on subsequent removal to this Court, we proactively seek an order of release so that Mr. Munafo is not inadvertently transferred to this District if released on bond in Michigan.

We thus request that Mr. Munafo be released here on the same conditions imposed in the Western District of Michigan should his release be ordered.

## II.   Motion to Schedule Detention Hearing

Alternatively, we request that ths Court schedule a detention hearing to take place via video teleconference from Newyago County Jail around two weeks from this motion (to allow sufficient time to coordinate with Mr. Munafo, counsel on the Michigan matter, and the Newyago County Jail). *See* DE-8 (referring the "matter to a Magistrate Judge to promptly conduct a Detention Hearing").

RESPECTFULLY SUBMITTED.

April 19, 2022

**Eric Alexander Vos**
Federal Public Defender,
District of Puerto Rico

**Franco Pérez-Redondo**
Assistant Federal Public Defender,
District of Puerto Rico

*/s/* **Kevin E. Lerman**\*
Research & Writing Attorney
241 F.D. Roosevelt Ave.
San Juan, PR 00918-2441
Tel. (787) 281-4922, Fax (787) 281-4899
E-mail: Kevin_Lerman@fd.org

**\* I CERTIFY** that on this date I ECF-filed this Motion, sending notification to all parties of record.