**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.: 21-CR-330 (JEB)** |
| | : | |
| **JONATHAN JOSHUA MUNAFO,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTION REQUESTING
ORDER OF PRETRIAL DETENTION OF DEFENDANT**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that this Court issue an Order detaining defendant Jonathan Joshua Munafo pending trial. The defendant was arrested on the criminal complaint from this case, and an initial appearance was held in the Middle District of Florida on April 26, 2021. ECF No. 12, pp. 1-2. At the initial appearance, the government requested detention of the defendant and the court set a preliminary hearing for April 30, 2021, and the defendant was ordered detained until that time. *Id*. at 2, 4. On April 28, 2021, a grand jury in the District of Columbia issued a ten-count Indictment against the defendant. ECF No. 6.

Before the defendant's arrest and indictment for the crimes committed in the District of Columbia, the defendant had been indicted and arrested on crimes committed in or having connection to the District of Western Michigan, Southern Division. *See* 21-CR-99 (JTN) (WDMI). The three-count Michigan indictment charges two violations of 18 U.S.C. § 875(c)—Interstate Threatening Communications, and one count of 47 U.S.C. § 223(a)(1)(E)—Interstate Harassing Telephone Calls. In a document called Findings and Order on Removal Proceedings Pursuant to Rule 5(c), Fed. R. Crim. P., filed on April 30, 2021, the Magistrate Judge for the Middle District of Florida ordered:

1. That the United States Marshal remove Defendant to the Western District of Michigan because that is the case in which the first order of removal was entered.

2. After Defendant is removed to the Western District of Michigan, he shall be removed by the United States Marshal to the District of Columbia to answer the prosecution pending in that court.

3. The timing of Defendant's removal from the Western District of Michigan to the District of Columbia will be decided by the district court in the Western District of Michigan.

4. Defendant has reserved on the issues of identity and detention and has asked that those matters be addressed by the district court for the District of Columbia.

ECF No. 12, pp. 5-6.

In the Michigan case, the detention hearings were stayed pending the results of a competency evaluation. The competency evaluation was performed, and the result was that the defendant was "found competent to proceed." 21-CR-99 (JTN), ECF No. 28. At a status hearing held on November 29, 2021, the defendant "waived [his] detention hearing and [was] ordered detained pending further proceedings before the district judge." *Id*. On May 16, 2022, defendant's counsel in the Michigan case filed a motion for pretrial release on bond. 21-CR-99 (JTN), ECF No. 46.

One issue that the government finds troubling is the fact that in at least two points in defendant's motion in the Michigan case, the defendant's Michigan counsel appears to misrepresent this Court's position on pretrial release of the defendant. First, defendant claims, "Mr. Munafo now asks to reopen the hearing on good cause shown, specifically that he is set for a bail hearing in the D.C. Circuit matter on May 17, 2022, *where the Court appears amenable to release him* to a half-way house pending the resolution of both the federal matters." ECF 21-CR-99 (JTN), ECF No. 46, p. 2 (emphasis added). The defendant then claims, "*The Court indicated a willingness to allow Mr. Munafo to be released and impose a cash bond* so that he could avoid extradition or detainer issues should he gain release in the Michigan case." *Id*. at p. 5 (emphasis added). While

true that the second claim is qualified by the statement, "should he gain release in the Michigan case," it appears—especially when viewed in conjunction with the first claim—to insinuate that this Court is predisposed to release the defendant. It is the government's understanding that this is not the case.

A detention hearing is set for Munafo on May 17, 2022, and the government believes that this Court should enter an Order of Detention Pending Trial. This Court should make this finding on the grounds of both risk of flight and safety to the community. At the time of his arrest in April 2021, Munafo had at least five pending criminal matters from around the country, two outstanding warrants from Massachusetts, a violation of a suspended sentence from an American Indian reservation, a federal arrest warrant, and an active BOLO from the FBI relating to his behavior on January 6, 2021. Even since being federally arrested, the defendant has incurred an additional criminal charge in Oklahoma for placing a bodily fluid on an officer while in prison. There is no condition or combination of conditions that can reasonably ensure the appearance of the defendant or the safety of the community or any member thereof if this Court were to release the defendant.

## I.     PROCEDURAL BACKGROUND

On April 28, 2021, a Grand Jury in the District of Columbia issued a true bill charging the Munafo with the following ten offenses. ECF No. 6.

1. 18 U.S.C. § 231(a)(3)—Civil Disorder

2. 18 U.S.C. §§ 111(a)(1)—Assaulting, Resisting, or Impeding Certain Officers

3. 18 U.S.C. § 1512(c)(2) and 2—Obstruction of an Official Proceeding and Aiding and Abetting

4. 18 U.S.C. § 1752(a)(1) and (b)(1)(A)—Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

5. 18 U.S.C. § 1752(a)(2) and (b)(1)(A)—Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

6.  18 U.S.C. § 1752(a)(4) and (b)(1)(A)—Act of Physical Violence Against Property on Restricted Grounds with a Dangerous Weapon

7.  18 U.S.C. § 1752(a)(4)—Engaging in Physical Violence in a Restricted Building or Grounds

8.  18 U.S.C. § 641—Theft of Government Property

9.  40 U.S.C. § 5104(e)(2)(D)—Disorderly Conduct in a Capitol Building

10. 40 U.S.C. § 5104(e)(2)(F)—Act of Physical Violence in the Capitol Grounds or Buildings

These charges stem from Munafo's involvement in the attack on and riot at the United States Capitol in Washington, D.C., on January 6, 2021.

The government now requests that this Court issue an Order of Detention so that Munafo remains detained pending trial.

## II.   FACTUAL BACKGROUND

### A.   The 2020 United States Presidential Election and the Official Proceeding on January 6, 2021

The 2020 United States Presidential Election occurred on Tuesday, November 3, 2020. The United States Electoral College is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president, with each state appointing its own electors in a number equal to the size of that state's Congressional delegation.

On December 14, 2020, the presidential electors of the Electoral College met in the state capital of each state and in the District of Columbia and formalized the result of the 2020 U.S. Presidential Election: Joseph R. Biden Jr. and Kamala D. Harris won sufficient votes to be elected the next president and vice president of the United States.

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol building. The purpose of the Joint Session was to open, count, and resolve any objections to the Electoral College vote of the 2020

Presidential Election, and to certify the results of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ l5-18.

### B.      The Attack at the Capitol on January 6, 2021

The Capitol is secured 24 hours a day by United States Capitol Police. The Capitol Police maintain permanent and temporary barriers to restrict access to the Capitol exterior, and only authorized individuals with appropriate identification are allowed inside the Capitol building.

On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

On January 6, 2021, at approximately 1:00 PM, the Joint Session convened in the Capitol building for the Certification of the Electoral College vote. Vice President Michael R. Pence presided, first in the Joint Session and then in the Senate chamber.

A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway. Crowd members eventually forced their way through, up, and over Capitol Police barricades onto the Capitol grounds and advanced to the building's exterior façade. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured. Nonetheless, shortly after 2:00 PM, crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting Capitol Police officers. Other crowd members encouraged and otherwise assisted the forced entry. The crowd was not lawfully authorized to enter or remain inside the Capitol building or grounds, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials.

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate (including Vice President Pence) were evacuated from their respective chambers. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

Later that night, law enforcement regained control of the Capitol building and grounds. At approximately 8:00 PM, the Joint Session reconvened, presided over by Vice President Pence.

### C.    Munafo's Criminal History

Munafo has a lengthy arrest history and criminal history that is replete with violence and aggression towards family, friends, strangers, and law enforcement.

- **July 1, 2002—Plymouth, Massachusetts—Plymouth Police Department**
  - 15 years old
  - Arrested for assault and battery
  - No further information is currently available.

- **October 4, 2003—Bethlehem, New York—Bethlehem Town Police Department**
  - 16 years old
  - Arrested for 2nd Degree Menacing (w/ weapon) and harassment
  - November 18, 2003—GUILTY—2nd Degree Menacing
  - January 20, 2004—SENTENCE—Time served

- **October 17, 2003— Bethlehem, New York—Bethlehem Town Police Department**
  - 16 years old
  - Arrested for 2nd Degree Criminal Contempt and Disorderly Conduct
  - November 18, 2003—GUILTY—2nd Degree Criminal Contempt
  - SENTENCE—Three-year term of probation

- **October 26, 2003— Bethlehem, New York—Bethlehem Town Police Department**
  - 16 years old
  - Arrested for 2nd Degree Criminal Contempt and 2nd Degree Harassment
  - Disposition and sentencing dismissed as covered by related case

- **August 1, 2007— Bethlehem, New York—Bethlehem Town Police Department**
  - 20 years old
  - Arrested for 3rd Degree Criminal Possession of a Weapon, 1st Degree Menacing, and 2nd Degree Harassment (physical contact)
  - Disposition and sentencing dismissed as covered by related case

- **January 11, 2008— Bethlehem, New York—Bethlehem Town Police Department**
  - 20 years old
  - Arrested for 1st Degree Criminal Contempt (violation of an order of protection with physical contact)
  - January 18, 2008—GUILTY—2nd Degree Criminal Contempt
  - SENTENCE—90 days incarceration

- **January 22, 2015—Rensselaer County, New York—Rensselaer County Sheriff's Office**

- o 27 years old
- o Arrested for Resisting arrest, Aggravated Unlicensed Operation of a Motor Vehicle, and Disorderly Conduct
- o No further information currently available

- **July 16, 2020—Tumwater, Washington—Tumwater Police Department**
  - o 33 years old
  - o Arrested for Displaying a Weapon and Driving with a Suspended License
  - o GUILTY—Displaying a Weapon
  - o SENTENCE—365 days incarceration with all but 350 days suspended, including fourteen days credit for time served
  - o **NOTE: Munafo violated terms of suspended sentence by subsequent arrests**

- **September 14, 2020—Salisbury, Massachusetts—Massachusetts State Police**
  - o 33 years old
  - o Victims report that Munafo threatened to shoot another man at a rest stop
  - o Summons issued for Munafo to appear
  - o Munafo failed to appear
  - o **NOTE: Active warrant out of Newburyport District Court**

- **September 22, 2020—Newberry, Massachusetts—Massachusetts State Police**
  - o 33 years old
  - o Munafo called emergency line 21 times, using vulgar language and claiming that he should not be in trouble for the September 14 incident.

- **November 6, 2020—Lynn, Massachusetts—Lynn Police Department**
  - o 33 years old
  - o Arrested for Assault and Battery in the Presence of a Police Officer; Assault and Battery; and Threatening to Commit a Crime
  - o Munafo was on the boardwalk holding a sign that stated "The no longer silent majority stands with Trump. His car, easily identifiable as the same car from the September 14 incident, was parked nearby.
  - o Munafo assaulted a jogger, punched a woman in the face.
  - o While at a hospital post-arrest, Munafo has to be restrained using handcuffs. When an officer came in, he attempted to throw the call button at him and used racial slurs against him, stating, "You fucking sp**, you stupid n*****." He then spat at the police officer and some of the defendant's expectorate struck the officer in the eye.
  - o Munafo was released on bond pending a trial that was set for January 7, 2021.
  - o **NOTE: Active warrant out of Lynn, Massachusetts**

- **December 12, 2020—Washington, D.C.—Metropolitan Police Department**
  - o 33 years old
  - o Munafo arrested for possession of a prohibited weapon at the so-called Mega MAGA March.
  - o No further information currently available.

- **January 5, 2021—Calhoun County, Michigan—Federal Bureau of Investigation**
  - 33 years old
  - While at a rest stop in Dunns, North Carolina, and over a three-hour time period, Munafo made approximately 143 threatening calls to 911 dispatchers in Calhoun County, Michigan.
  - Munafo claimed that his name was "Yankee Patriot" and told a dispatcher that he was going to cut her throat.
  - Munafo cited to the dispatcher accurate information regarding her home address and mortgage payment arrangements. Munafo's behavior and repeated calls also tied up the entire county emergency response system.
  - A few of Munafo's quotes include:
    - "Put a fucking cop on the phone now you stupid bitch, or it's going to go way worse for your family!"
    - "Bitch, I'm gonna cut your throat. I'm gonna make you eat your fucking nose. I'm gonna hurt you bad for this. It won't be today, it won't be tomorrow, it'll be fucking soon though, you stupid cunt. Insurrection Act, I'm coming to your door first and it's public knowledge, you stupid, stupid bitch!"
  - **NOTE: This case (21-CR-99 (JTN) (WDMI)) is currently set for trial on June 28, 2022**

- **January 6, 2021—Washington, D.C.—Federal Bureau of Investigation**
  - This is the present case.

- **January 7, 2021—Maryland**
  - While driving without a valid driver's license, Munafo was involved in a traffic incident that totaled the vehicle he was driving (which belonged to his friend).
  - Munafo got a ride to California with other Trump supporters.[1]

- **January 18, 2021—Davis, California—Davis Police Department**
  - Arrested for Disturbing the Peace by Fighting at a celebration for Dr. Martin Luther King Day.
  - **NOTE: Active warrant out of Yolo County, California**

- **May 24, 2021—Oklahoma—U.S. Marshals**
  - After being released following the California arrest, Munafo took a Greyhound bus from California to Florida. Munafo was arrested in Florida, and as previously indicated, ordered to be removed from the Middle District of Florida to the Western District of Michigan.

---

[1] *See* Nate Thayer, *Capitol Rioter's Excellent Vacation on Trump's Campaign Trail: A Portrait of an American Insurrectionist*, May 15, 2021, https://natethayer.wordpress.com/2021/05/15/capitol-rioters-excellent-vacation-on-trumps-campaign-trail-a-portrait-of-an-american-insurrectionist/.

- o   While in the custody of the U.S. Marshals, Munafo was charged with Prisoner Placing Bodily Fluid on Government Employee.
- o   **NOTE: This case is pending.**

Prior to his latest string of arrests, dating back to July 16, 2020, Munafo appears to have lived on the road, traveling from location to location without a stable residence and in a car that was borrowed from a friend. These locations include South Carolina[2] (February 2020), Manchester, New Hampshire[3] [4] (February 2020), Tulsa, Oklahoma[5] [6] (June 2020), Charleston, South Carolina[7] (June 2020), Las Vegas, Nevada[8] (June 2020), and Washington, D.C.[9] (November 2020).

### D.   Munafo's Actions on January 6, 2021

On January 6, 2021, Munafo was in violation of his suspended sentence out of Washington State and had two active warrants out of Massachusetts. The day prior to January 6, while driving through North Carolina without a valid license, Munafo spent three hours calling and threatening emergency dispatchers. According to the Affidavit in Support of the Criminal Complaint filed in the Michigan case, "MUNAFO also searched [Google] for 'Freedom Plaza, Washington, DC,'

---

[2] https://www.greenvilleonline.com/story/news/politics/elections/2020/02/26/bernie-sanders-rally-sc-draws-democratic-candidate-campaign-supporters-others-out-curiosity/4878956002/

[3] https://www.wmur.com/article/president-trump-rally-scheduled-for-monday-night-in-manchester-road-closures-start-7-am/30841978#

[4] https://wbznewsradio.iheart.com/content/2020-02-10-lines-already-forming-for-trumps-nh-rally-ahead-of-the-primary/

[5] https://local21news.com/news/nation-world/trump-supporters-already-forming-line-outside-venue-of-controversial-campaign-rally

[6] https://tulsaworld.com/news/local/gov-stitt-q-a-on-trump-rally-in-tulsa-a-venue-change-a-tour-of/article_4d01f231-5739-5af4-8680-9e2efa1e8c86.html

[7] https://twitter.com/therightstuff87/status/1272977149511647232

[8] https://twitter.com/therightstuff87/status/1273874583326613504

[9] https://natethayer.files.wordpress.com/2021/05/munafo-flag.jpg?w=1000&h=1461

several firearms and military surplus stores, and 'Gretchen Whitmer' on January 4 and 5, 2021."
21-CR-99 (JTN) (WDMI), ECF No. 1-1, p. 3.

     To avoid unnecessary duplication, the government incorporates and adopts all text and pictures from the Statement of Facts in this case, signed by both the FBI Special Agent and Magistrate Judge Faruqui on April 23, 2021. ECF No. 1-1, pp. 3-8.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

The following photos are publicly available[10] and show the events leading up to and culminating in his assault on a stranger in Lynn, Massachusetts:

 



*IMAGES 1, 2, 3—Screenshots from a publicly available site showing Munafo in Lynn, Massachusetts, on November 6, 2020, where he struck a jogger, punched a woman in the face, and then fled to his car.*

---

[10] https://natethayer.wordpress.com/2021/05/15/capitol-rioters-excellent-vacation-on-trumps-campaign-trail-a-portrait-of-an-american-insurrectionist/

  

  

***IMAGES 4, 5, 6***—*Screenshots from Government's Exhibit 1 showing Munafo chasing and punching a jogger, punching a woman in the face, and then fleeing the scene.*

E.      **Munafo's Actions Post-January 6, 2021**

After January 6, 2021, Munafo began driving west without a valid license and was involved in a traffic incident. He then got a ride to California where he was involved in another violent altercation during a Dr. Martin Luther King Day celebration. He then got on a bus and traveled to Florida where he was arrested. Even after being arrested in this and the federal matter out of Michigan, the defendant continued to rack up additional criminal charges, specifically a charge out of Oklahoma for placing a bodily fluid on a police officer.

F.      **Munafo's History and Characteristics**

Throughout most of his travels dating back to 2020, Munafo drove an orange 2015 Chevrolet TRX with New York State vanity plates, specifically Naval Militia plates with the number 305. This car is pictured above in IMAGE 3 and IMAGE 6. At no point from 2020 to his arrest in Florida did Munafo have a valid driver's license. As stated above, Munafo totaled the car on January 7, 2021, while in Maryland. This car belonged to a "friend" of Munafo's, the same individual to whom Pretrial Services out of the Middle District of Florida recommended that Munafo be released. After totaling his car, however, Munafo did not even tell his friend or attempt to return to New York. Instead he hitched a ride with other Trump supporters and went to California. The friend only learned that his car had been totaled after the insurance company called him to see what he wanted to do with it. Munafo called this friend while in custody in Florida, and stated that Munafo did not have steady employment, worked intermittently in pest control, and loved driving across the country.[11]

The Pretrial Services Report from the Middle District of Florida, prepared following Munafo's arrest in April 2021, avers that Munafo has lived in Vermont; San Francisco, California;

---

[11] *Id.*

Los Angeles, California; Chicago, Illinois; and New York. Munafo claims to have relocated to Florida, but could not remember his own cellphone number. He claimed to be about to start a job at a pizza restaurant, and further claimed—in contrast to his friend's statements about pest control—to have held occasional employment as an appliance repairman. The pretrial report also confirmed that Munafo did not have a valid license at the time of his arrest. Munafo maintains no contact with his mother or any of his three siblings.

### G.     Government's Evidence

As shown by the Statement of Facts, the government has a significant body of evidence assembled against the defendant that includes opensource video from multiple angles and Metropolitan Police Department body worn camera video that shows Munafo attacking a federal officer and robbing him of a shield. The government's evidence further shows the defendant attempting to smash out a window of the Capitol with a flagpole.

## III.   LEGAL AUTHORITIES

### A.     Statute

Statute requires that once a defendant appears before a judicial officer,

the judicial officer shall issue an order that, pending trial, the person be—

1)  Released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

2)  released on a condition or combination of conditions under subsection (c) of this section;

3)  temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

4)  detained under subsection (e) of this section.

18 U.S.C. § 3142(a).

If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e)(1)

The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—

(1) upon motion of the attorney for the Government, in a case that involves—

(A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; [or]

. . .

(2) upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

(A) a serious risk that such person will flee

The factors to be considered by the judge include the nature and circumstances of the offense charged, including whether the offense is a crime of violence, the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### B.    Relevant Caselaw

In one of the more recent detention appeals of a January 6 defendant to the Court of Appeals for the D.C. Circuit, in a *per curiam* decision, the court upheld the detention of Edward Jacob Lang. *United States v. Lang*, No. 21-3066, 2022 U.S. App. LEXIS 990 (D.C. Cir. Jan. 12, 2022). That defendant, like Munafo, is alleged to have assaulted police officers. In affirming Lang's order of detention, the court quoted its ruling in *Munchel*, reiterating, "those who actually assaulted police officers . . . are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* at *2 (*quoting United States v. Munchel*, 991 F.3d 1273, 1284, 451 U.S. App. D.C. 294 (D.C. Cir. 2021). After January 6, Lang is said to have "boasted about his conduct, advocated taking up arms against the government, and attempted to organize militias for future acts of violence." *Lang*, 2022 U.S. App. LEXIS 990, at *2. In mitigation, Lang argued that he has a "limited criminal history" and he occasionally attempted "to aid others on January 6." *Id.* The District Court concluded that Lang "would pose a

danger to the community if released given his risk of committing or advocating violence in support of his political beliefs," a decision in which the Circuit Court found no clear error. *Id.*

Another instructive case is that of *United States v. Emanuel Jackson*, 21-CR-395 (TJK). As outlined in Magistrate Judge Harvey's Order of Detention Pending Trial in that case, Jackson is also alleged to have assaulted "law enforcement officers with his fist and a baseball bat." *Id.* at ECF No. 13, p. 3. The fact that he engaged in two distinct acts of violence "shows that his conduct at the Capitol was not a momentary lapse of judgment, but instead, was an ongoing act of violence that disrupted Congressional functions." *Id.* Jackson is "young and has no criminal history" and "struggles with mental health issues." *Id.* at 4. Jackson emphasized to the court that he does not possess a cellphone, lives in a homeless shelter, and turned himself in to law enforcement." *Id.* at 2. Nonetheless, Magistrate Judge Harvey found that "no conditions or combination of conditions of release would reasonably assure the safety of the community or law enforcement if he were released." *Id.* at 4.

## IV.   THE GOVERNMENT'S REQUEST FOR AN ORDER OF DETENTION PENDING TRIAL

All the facts and circumstances, history and characteristics, and legal authorities and caselaw surrounding Jonathan Joshua Munafo and the allegations against him establish by clear and convincing evidence that this Court should grant the government's request for an Order of Detention Pending Trial. As shown below, nearly every factor points towards the defendant being a danger to the community and a risk of flight.

The weight of the evidence against Munafo is strong. The government has numerous videos and photographs showing that Munafo at or around the center of the maelstrom and medieval

combat that was the Lower West Terrace.[12] He was not content to be at the Capitol, he sought out the most violent point of contention and made his way to the front of the riot. When there, he took advantage of his position and the overwhelmed police officers when he attacked an officer and ripped the riot shield from his hands. Munafo can also clearly be seen attacking the Capitol itself with a flagpole, attempting to smash in its windows.

This all comes directly on the heels of a string of deeply disturbing unprovoked violent assaults on strangers, arrests and unanswered arrest warrants across the country, and violent rhetoric. Just one day before laying siege to the Capitol, Munafo spewed unabashed and reprehensible threats to a 911 dispatcher, claiming that he was going to cut her throat and eat her nose. He then said that he would soon be at her door, and that whatever he did to her, it would be way worse for her family.

And this is not an aberration or an outlier in the trajectory of Munafo's behavior. As stated above, while parked at a rest stop in his bedecked and borrowed orange TRX, a family came to look at the stickers. Munafo jumped out of the driver's seat and shoved a female (who was over 60 years old) to the ground. He then began yelling at the female's husband and son, saying that he was going to shoot them. When police arrived, Munafo volunteered that he had just been arrested in Washington State for threatening to shoot someone.[13] About a week later, Munafo made nearly two dozen phone calls to an emergency dispatcher in Massachusetts claiming that he should not have received a summons for threatening to shoot the family at the rest stop.[14]

---

[12] *See* https://www.nytimes.com/interactive/2021/10/16/us/capitol-riot.html

[13] *See* https://www.newburyportnews.com/news/local_news/man-charged-in-salisbury-was-arrested-after-capitol-riot/article_694c4de3-77a9-5a70-983c-4ff6a8eed1e3.html.

[14] https://www.newsweek.com/capitol-rioter-yankee-patriot-charged-threats-911-dispatcher-after-making-143-calls-1593875

Munafo is subject to a lengthy period of incarceration if convicted, and he has a prior criminal history involving several violent assaults on others, and a proven inability to follow court direction or abide by the law. Whenever he is released, he is quickly rearrested or fails to show up for court appearances as ordered. Munafo was a violent contributor to the Capitol siege while several arrest warrants were active. He was also in violation of the conditions of the suspended jail sentence he received in Washington State.[15]

Jackson, the Capitol siege defendant mentioned above who was ordered detained pending trial, had no criminal history and he turned himself in. Munafo has several convictions and a history of failing to appear when required by the court. He has no family support, no stable residence, and no stable employment.

As to the nature and circumstances of the offense, those are outlined in detail above and in the Statement of Facts, as are the representations of the strength of the government's evidence. As the District Court did in the cases of Capitol rioters Lang and Munchel, this Court should view Munafo as "in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." Munafo sought out and assaulted law enforcement using his fists to assault the officer and rob him of government property. Munafo then used the American flag to attempt to smash out the windows of the Capitol itself. This Court should order Munafo detained pending trial.

As to dangerousness, many reasons have already been laid out that should convince this Court that Munafo is dangerous. Munafo has shown a willingness to engage in violence when it aligns with his beliefs and fanaticism. Beyond that, and as stated by Magistrate Judge Harvey in

---

[15] While he has not yet been officially violated in Washington for his participation in the Capitol siege or for his defiance of the conditions of his suspended sentence, the government has a substantial body of evidence showing that he should be.

support of Jackson's pretrial detention, "Defendant's alleged conduct was a direct and violent attack against law enforcement officers in particular, and the democratic process in general." ECF No. 13, p. 4, 21-CR-396 (TJK). Munafo possesses many of the aggravating factors that have led Magistrate and District Judges to order that January 6 defendants be detained, and none of the mitigating factors that would allow this Court to have "confidence that Defendant would comply with any release conditions set by this Court." *Id.*

Here, Munafo *does* have a criminal history and he *does* have a propensity for violence. As proffered by the government, at a bare minimum this Court may consider the defendant has numerous convictions and even more arrests for violent behavior and violations of orders of protection, convictions for criminal contempt, and violence and threats of violence against law enforcement.

Another notable and relatively recent determination of detention is found in *United States v. Richardson*, No. 21-721 (CKK), 2022 U.S. Dist. LEXIS 15160 (D.D.C. Jan. 27, 2022). In *Richardson*, the Magistrate Judge out of the Eastern District of Pennsylvania ordered the defendant, a 71-year-old resident of Pennsylvania, detained after finding that the government had proven by clear and convincing evidence that no condition or combination of conditions could reasonably ensure the safety of the community, an order that defense counsel asked District Court Judge Kollar-Kotelly to revoke. *Id.* at *11. In her determination of the motion, the Judge Kollar-Kotelly "decline[d] to hear additional evidence." *Id.* at *2.

Richardson had traveled to D.C. from Pennsylvania and is first seen at approximately 1:40 PM confronting law enforcement on the west side of the Capitol. *Id.* at *4. At one point, Richardson "raise[d] [a] flagpole and forcefully [swung] it downward, striking a police officer standing behind the metal barricade." *Id.* at *5. He swung it two more times, with the third swing

resulting in the flagpole breaking. *Id.* at \*5-\*6. He then appears to have dispersed when a chemical irritant was deployed. *Id.* at \*6. Between July 2018 and September 2021, Richardson had three encounters with local law enforcement, to include displaying a firearm at a gas station altercation, carrying a firearm and driving without a license, and allegedly knocking a motorcyclist off his motorcycle and brandishing a weapon at the victim's brother when he approached Richardson. *Id.* at \*13-\*16.

One thing that distinguishes the *Richardson* opinion from the prior two is Judge Kollar-Kotelly's thorough and recent (as compared to this case) consideration of the fourth factor. Notably, she writes,

> Consistent with other courts in this jurisdiction, the Court is unpersuaded by any argument that he does not present prospective danger to the community because the precise circumstances of January 6, 2021 may not recur. *See, e.g.*, *Sabol*, 534 F. Supp. 58, 2021 WL 1405945, at \*18 ("While the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again."). As the court articulated in *Whitton*, "even if the exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the defendant] committed that day are serious enough on their own to militate against pretrial release under this first Section 3142(g) factor." 534 F. Supp. 3d 32, 2021 WL 1546931, at \*9. The same is true as to Defendant Richardson. *See Munchel*, 991 F.2d at 1284 (observing that Capitol Riot defendants who acted violently are in a different category of dangerousness than those who did not do so).

*Id.* at \*35. In weighing the 18 U.S.C. § 3142(g) factors, Judge Kollar-Kotelly, in an analysis that more directly mirrors the appropriate analysis in this case, finds that all four of the factors weigh in favor of pretrial detention. The government asks this Court to make the same finding as to Munafo and issue the government's requested order of pretrial detention.

But Munafo's calculus goes even further, for the third factor under 18 U.S.C. § 3142(g)(3)(B) directs the judicial officer to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." Munafo was,

in fact, in the midst of a suspended sentence for a locally charged offense where he had, by his own admission to Massachusetts police officers, threatened to shoot someone in Washington State. Further, prior to January 6, Munafo had already indicated that he would not abide by conditions of release set by the court as shown by his several arrests and convictions for criminal contempt stemming from violations of orders of protection. Thus, the third factor weighs in favor of pretrial detention for Munafo.

The nature and circumstances of the instant offense are such that the Munafo is in a different category than other January 6 defendants because he engaged in direct and inexcusable violence against a police officer. The weight of the evidence against the defendant is strong. Everything is on video and in photographs. The history and characteristics of the defendant show a clear pattern of violence, failure to abide by court orders, inability to live a law-abiding life, and a general lack of stability and propensity for transience that renders him all but incapable of being able to appear when required by the Court. The nature and seriousness of the danger posed by the defendant's release is precisely that as soon as he is released, he will engage in unpredictable and escalating acts of violence against any unsuspecting member of the community into which he is released. And there is no guarantee that he will come back.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

## V.     CONCLUSION

For all these reasons, the government believes that there is clear and convincing evidence that no condition or combination of conditions may be crafted by this Court that would reasonably ensure the appearance of Munafo or the safety of the community as Munafo awaits trial. The government therefore respectfully requests that this Court issue an Order of Detention Pending Trial.

Respectfully submitted,

Matthew M. Graves
Acting United States Attorney
DC Bar No. 481052

By: SEAN P. MURPHY
Assistant United States Attorney
D.C. Bar No. 1187821
Torre Chardon, Ste 1201
350 Carlos Chardon Ave
San Juan, PR 00918
787-766-5656
sean.murphy@usdoj.gov